UNITED STATES v. KNOTT.

(District Court, E. D. Missouri, E. D. March 1, 1907.)

No. 5,285.

INTERNAL REVENUE—VIOLATION OF OLEOMARGARINE LAW—EMPTIED PACKAGES
—DESTRUCTION OF STAMPS.

The oleomargarine law (Act Aug. 2, 1886, c. 840, § 6, 24 Stat. 210 [U. S. Comp. St. 1901, p. 2230]) provides that all oleomargarine shall be packed by the manufacturer in packages containing not less than 10 pounds, and stamped, and that retail dealers must sell only from original stamped packages, in quantities not exceeding 10 pounds, and shall pack the oleomargarine sold by them in suitable packages, which shall be marked as prescribed. A regulation made by the Commissioner of Internal Revenue permits retail dealers to take the oleomargarine from the original stamped package in advance of sales, and put it up in retail packages, marked and branded as prescribed by law and regulations, and offer the same for sale, provided such prepared retail packages remain till sold in or on the manufacturer's original package; a retail dealer, however, to be subject to a fine if he remove his prepared packages from the original package and sell them separated from and independently of the manufacturer's stamped package. *Held*, that a manufacturer's stamped package is not "emptied," within section 13, making it the duty, subject to a fine for violation thereof, of the person in whose hands the package is when emptied, to destroy the stamps thereof, where it still contains a pound package put up by the retailer out of its original contents.

Indictment for Violation of Act Cong. Aug. 2, 1886, c. 840, § 13, 24 Stat. 211 [U. S. Comp. St. 1901, p. 2232].

David P. Dyer, U. S. Dist. Atty., and Horace L. Dyer, Asst. U. S. Dist. Atty.

H. W. Blodgett, for defendant.

AMIDON, District Judge (orally). The defendant is a retail dealer holding licenses for the sale of both pure and colored oleomargarine.

He is charged in the indictment with a violation of Act Aug. 2, 1886, c. 840, § 13, 24 Stat. 211 [U. S. Comp. St. 1901, p. 2232], commonly known as the "Oleomargarine Act," which provides that:

"Whenever any stamped package containing oleomargarine is emptied, it shall be the duty of the person in whose hands the same is to destroy utterly the stamps thereof, and any person who willfully neglects or refuses so to do shall, for each offense, be fined," etc.

The act above referred to divides dealers in oleomargarine into two classes: First, the manufacturer or wholesaler. His establishment is under the immediate supervision of officers of the Internal Revenue Department in substantially the same manner as a distillery in which spirituous liquors are manufactured. He is required to put up his commodity in packages containing not less than 10 pounds and to pay the duty thereon provided by law, which is evidenced by a stamp affixed to the package, which is otherwise branded by the officers of the revenue in accordance with the statute and regulations adopted to carry it into effect. All taxes upon the commodity are thus paid by the wholesaler or manufacturer. The second class consists of retail dealers. They are required to sell from original stamped packages only, but are not permitted to sell in such packages; that is, they are not permitted to sell wholesale packages entire. They are required to pack the oleomargarine in smaller quantities, wrapped in suitable wooden or paper packages, stamped conspicuously with the word "Oleomargarine" and with the quantity of the package in pounds. In actual trade wholesalers are accustomed to put up the commodity in 50-pound tubs, and retailers in 1-pound packages, wrapped in oil paper so as to resemble, both in form and size, the packages in which creamery butter is now usually prepared.

Retail dealers experienced a serious difficulty in conforming to these requirements. They were required to sell only from original packages, and were at the same time required to sell only in quantities not exceeding 10 pounds, and to wrap their packages in suitable wooden or paper wrappers, and stamp and brand the same as above specified. It was found impracticable for them to wait until their customers applied for the oleomargarine, and then take it from the original stamped package and put it up in retail packages to conform to the statute. To meet this difficulty, and by way of a practical construction of the act, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, made the following regulation:

"Retail dealers are permitted to take oleomargarine from the original stamped packages in advance of sales, and put it up in retail packages, marked and branded as the law and these regulations prescribe, and offer the same for sale, provided such prepared retail packages remain in the manufacturer's original package, or, at most, stacked up upon the outside thereof or upon the lid undetached from the package, until the contents have been bargained for and sold; provided that, in so doing, none of the marks, brands, stamps, and notices required upon the package are concealed. But should the dealer remove his prepared packages from the original package, and sell them separated from and independently of the manufacturer's stamped package, he involves himself in liability to a fine of $1,000. The oleomargarine must remain in or upon the original stamped package until sold therefrom."

The decision of this case must turn upon the effect of this regulation. When is an original stamped package empty, within the meaning of

section 13 of the oleomargarine act? Does this occur when the contents are removed and put up in retail packages, as permitted by the regulation, or only when such packages have been all sold, providing they are kept either in or upon the original stamped package?

By a comparison of sections 6 and 13 of the oleomargarine act, in connection with the regulation above quoted, it will be seen that the retail dealer is placed between two fires. On the one hand, it is made' a crime for him to sell oleomargarine except from the original stamped package. Under this provision he must retain the original stamped package, with the stamp uncanceled, as a protection for his sales, until the entire contents of the package have been disposed of. If he fails to do so, any retail packages that are found in his hands are subject to seizure. Or, if he sells them, he exposes himself to severe penalties under other provisions of the act. On the other hand, under section 13, whenever the original stamped package is emptied, the dealer must promptly destroy the stamp thereon.

Under the regulation above quoted, the retailer, having been permitted to remove the contents of the original package for the purpose of putting it up in retail packages, provided he keeps them in or upon the original package, I think it necessarily follows that the original package is not empty, within the meaning of the law, so as to require the cancellation of the stamp, so long as any retail package remains. The language of the regulation and other provisions of the statute above pointed out render this construction unavoidable. If a pound of the oleomargarine were still in the tub unpacked, no one would say that the tub was empty. But, putting the contents in retail packages, being authorized by the regulation, oleomargarine in that state is as much entitled to the protection of the stamp as it would be if it were in the original state.

The evidence and admissions in this case show that, at the time the original stamped packages that are the basis of this prosecution were seized by the revenue officer upon the premises of the defendant, each of these packages contained a one-pound package or print of oleomargarine, and it is admitted that this one pound was in each case a part of the original contents of the original stamped package in which it was found. Under these facts the defendant was not required to destroy the stamp.

I am aware that this construction exposes the revenue to serious abuses, but I do not see how the danger can be avoided and a practical effect be given to the statute. There are two kinds of oleomargarine— pure, or white, which is subject to a tax of one-quarter cent a pound, and colored, so as to resemble butter, which is subject to a tax of 10 cents a pound; and in the retail trade this tax is added to the price of the article. It is plain, however, from the evidence in this case, that it is a simple and cheap process to transform pure or white oleomargarine into colored oleomargarine. These are the circumstances which make it easy for a dishonest retailer to carry on a profitable trade by defrauding the revenue. He may buy a certain number of packages of colored oleomargarine, bearing the stamp required by law, and at the same time buy a certain number of packages of uncolored oleomargarine. He puts up retail packages of one pound each from the original stamped

packages containing the colored oleomargarine, and sells them until he has substantially exhausted the contents of the package. He may then convert the pure oleomargarine, by the use of a little coloring matter, into colored oleomargarine, and thus continue selling colored oleomargarine of his own manufacture, and, whenever his dealing is called into question, he may claim that the substance which he has sold was taken from the original stamped package of colored oleomargarine, and, as a general rule, it would be impossible for the government to prove the contrary.

The revenue officers state that honorable grocers are accustomed to put up their oleomargarine in retail packages in accordance with the regulation, and then sell the same upon telephone orders or otherwise in accordance with the usual retail grocery business. When the orders are received, the grocer ships the oleomargarine for delivery throughout the city, the same as he does butter. For the purpose of delivery, the retail packages are separated from the original stamped package, and, of course, that affords another opportunity for fraud, because, as soon as the retail package is once separated from its original package, there is no telling whether it came from the 10-cent package or was manufactured by the retailer from the ¼-cent package by the use of coloring matter.

The evidence here shows that the defendant's establishment is of a somewhat suspicious order. It is situated in a room adjoining a livery stable. At the same time the seizure was made, a large quantity of empty packages were found on the premises bearing stamps showing that they originally contained pure uncolored oleomargarine. The packages upon which this prosecution is based had originally contained colored oleomargarine, and were stamped accordingly. It was the practice of the defendant to fill orders by delivering the retail packages of oleomargarine to various homes and restaurants in the city upon orders previously solicited. Under such circumstances, it is quite manifest that it would be possible to violate the law, and that the government would be powerless to refute the oral statements of the retail dealer. Experience, however, shows that internal revenue transactions in which the government is wholly dependent upon the oral statements of the dealer are sure to lead to fraud upon the revenue.

The difficulties above indicated cannot be remedied by the court. Their correction lies with the Legislature. It would seem that the only way to shield the government from such frauds would be to require the original manufacturer to put up oleomargarine in packages suitable for the retail trade and affix to each of such packages the proper stamp. according to the quantity and the quality of its contents.

I am convinced that it is my duty in this case to advise the jury to return a verdict of acquittal.